UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JAMES C. WYRICH, | |
|     Plaintiff, | Case No. 3:20-cv-00682 |
| v. | Judge Eli J. Richardson |
| | Magistrate Judge Alistair E. Newbern |
| SOCIAL SECURITY ADMINISTRATION, | |
|     Defendant. | |

To:     The Honorable Eli J. Richardson, District Judge

## REPORT AND RECOMMENDATION

Plaintiff James C. Wyrich filed this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) denying his application for supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383f. (Doc. No. 1.) The Court referred this action to the Magistrate Judge to dispose or recommend disposition of any pretrial motions under 28 U.S.C. § 636(b)(1)(A) and (B). (Doc. No. 3.) Before the Court is Wyrich's motion for judgment on the administrative record (Doc. No. 22), to which the Commissioner has responded in opposition (Doc. No. 24), and Wyrich has filed a reply (Doc. No. 25). Having considered the parties' arguments and the administrative record as a whole, and for the reasons that follow, the Magistrate Judge will recommend that the Court grant Wyrich's motion.

## I.     Background

### A.     Wyrich's SSI Application

Wyrich applied for SSI on November 24, 2017, alleging that he had been disabled and unable to work since August 19, 2016, because of post-traumatic stress disorder (PTSD), sleep

deprivation, sciatica in his legs, issues with his left hand and wrist, mental issues, alcohol issues, chronic obstructive pulmonary disease (COPD), and depression. (AR 90.[1]) The Commissioner denied Wyrich's application initially and on reconsideration. (AR 73, 88.) At Wyrich's request, an administrative law judge (ALJ) held a hearing regarding his application on September 4, 2019. (AR 28–67, 127–32.) Wyrich appeared with counsel and testified. (AR 30–63.) The ALJ also heard testimony from a vocational expert. (AR 64–67.)

## B.    The ALJ's Findings

On October 2, 2019, the ALJ issued a written decision finding that Wyrich was not disabled within the meaning of the Social Security Act and denying his claim for SSI. (AR 10–22.) The ALJ made the following enumerated findings:

1.    The claimant has not engaged in substantial gainful activity since November 24, 2017, the application date. (20 CFR [§ ]416.971 *et seq.*).

2.    The claimant has the following severe impairments: chronic obstructive pulmonary disorder (COPD), degenerative disc disease of the lumbar spine, sciatica, nerve injury left ring finger secondary to old laceration, post-traumatic stress disorder (PTSD), depression, and alcohol abuse (20 CFR [§ ]416.920(c)).

\*        \*        \*

3.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR [§§ ]416.920(d), 416.925, and 416.926).

\*        \*        \*

4.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR [§ ]416.967(b), occasionally lifting and carrying 20 pounds and 10 pounds frequently. He can sit, stand and walk six of 8 hours each for a full 8-hour day. He has unlimited push/pull and gross/fine dexterity except for occasional

---

[1]    The transcript of the administrative record (Doc. No. 18) is referenced herein by the abbreviation "AR." All page numbers cited in the AR refer to the Bates stamp at the bottom right corner of each page.

pushing and pulling with the lower extremities, bilaterally and frequent left hand use. He can do occasional climbing of stairs, but no ladders, ropes, scaffolds or running. He can do occasional bending, stooping, crouching, crawling, balancing, twisting and squatting. He is limited to occasional exposure to dust, fumes, gases, chemicals, and excessive heat, cold, and humidity. He is limited to occasional exposure to heights, dangerous machinery and uneven surfaces. Mentally, the claimant can get along with others, understand simple instructions, concentrate and perform simple tasks and respond and adapt to workplace changes and supervision.

\*     \*     \*

5.     The claimant is unable to perform any past relevant work (20 CFR [§ ]416.965).

\*     \*     \*

6.     The claimant was born on November 16, 1967 and was 50 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR [§ ]416.963).

7.     The claimant has a limited education and is able to communicate in English (20 CFR [§ ]416.964).

8.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR [§§ ]416.969 and 416.969(a)).

\*     \*     \*

10.     The claimant has not been under a disability, as defined in the Social Security Act, since November 24, 2017, the date the application was filed through the date of this decision. (20 CFR [§ ]416.920(g)).

(AR 12–21.) The Social Security Appeals Council denied Wyrich's request for review on June 5, 2020, making the ALJ's decision the final decision of the Commissioner. (AR 1–6.)

### C.     Appeal Under 42 U.S.C. § 405(g)

Wyrich filed this action for review of the ALJ's decision on August 7, 2020, and this Court has jurisdiction under 42 U.S.C. § 405(g). Wyrich argues that the ALJ erred in determining the

standing and walking restrictions in Wyrich's residual functional capacity because the ALJ: (1) found that Wyrich was not receiving treatment or taking prescription medication for his back pain without considering possible reasons for the lack of treatment; (2) did not properly consider a medical opinion from consulting examiner Dr. William Huffman regarding Wyrich's standing and walking limitations; and (3) did not pose a hypothetical to the vocational expert that included Dr. Huffman's opined standing and walking limitations. (Doc. No. 22-1.) The Commissioner responds that the ALJ followed applicable SSA regulations and that the ALJ's residual functional capacity determination is supported by substantial record evidence. (Doc. No. 24.) Wyrich's reply reiterates his initial arguments. (Doc. No. 25.)

### D.    Review of the Record

The ALJ and the parties have thoroughly described and discussed the medical and testimonial evidence in the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## II.    Legal Standards

### A.    Standard of Review

This Court's review of an ALJ's decision is limited to determining (1) whether the ALJ's findings are supported by substantial evidence and (2) whether the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is less than a preponderance but "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co.*, 305 U.S. at 229); *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (same). Further, "[t]he Social Security Administration has established rules for how an ALJ must evaluate a disability claim and has made promises to disability applicants as to how their claims and medical evidence will be reviewed." *Gentry*, 741 F.3d at 723. Where an ALJ fails to follow those rules or regulations, "we find a lack of substantial evidence, 'even where the conclusion of the ALJ may be justified based upon the record.'" *Miller*, 811 F.3d at 833 (quoting *Gentry*, 741 F.3d at 722).

## B.   Determining Disability at the Administrative Level

Wyrich applied for SSI under Title XVI of the Social Security Act, which "is a welfare program" that provides "benefits to financially needy individuals who are aged, blind, or disabled regardless of their insured status." *Bowen v. Galbreath*, 485 U.S. 74, 75 (1988). "Disability" is defined in this context as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (explaining that this definition applies to SSI claims under Title XVI as well as disability insurance benefit claims under Title II).

ALJs must employ a "five-step sequential evaluation process" to determine whether a claimant is disabled, proceeding through each step until a determination can be reached. 20 C.F.R. § 416.920(a)(4). At step one, the ALJ considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). "If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis." *Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 554 n.2 (6th Cir. 1995). At step two, the ALJ determines whether the claimant suffers from "a severe medically determinable physical or mental impairment" or "combination of impairments" that

5

meets the 12-month durational requirement. 20 C.F.R. § 416.920(a)(4)(ii). "If the claimant does not have a severe impairment or combination of impairments, benefits are denied without further analysis." *Garcia*, 46 F.3d at 554 n.2. At step three, the ALJ considers whether the claimant's medical impairment or impairments appear on a list maintained by the SSA that "identifies and defines impairments that are of sufficient severity as to prevent any gainful activity." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); *see* 20 C.F.R. § 416.920(a)(4)(iii). "If the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled without further analysis." *Garcia*, 46 F.3d at 554 n.2. If not, the ALJ proceeds to step four.

At step four, the ALJ evaluates the claimant's past relevant work and "residual functional capacity" 20 C.F.R. § 416.920(a)(4), which is defined as "the most [the claimant] can still do despite [his] limitations" *id.* § 416.945(a)(1); *see id.* § 416.920(a)(iv). Past work is relevant to this analysis if the claimant performed the work within the past 15 years, the work qualifies as substantial gainful activity, and the work lasted long enough for the claimant to learn how to do it. *Id.* § 416.960(b)(1). If the claimant's residual functional capacity (RFC) permits him to perform past relevant work, "benefits are denied without further analysis." *Garcia*, 46 F.3d at 554 n.2. If a claimant cannot perform past relevant work, the ALJ proceeds to step five and determines whether, in light of his residual functional capacity, age, education, and work experience, a claimant can perform other substantial gainful employment. 20 C.F.R. § 416.920(a)(4)(v). While the claimant bears the burden of proof during the first four steps, at step five the burden shifts to the Commissioner to "identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011). "If the claimant is able to perform other work in the national

economy, . . . benefits are denied." *Garcia*, 46 F.3d at 554 n.2. If the claimant is unable to perform other work, the ALJ will find that the claimant is disabled.

## III.    Analysis

Dr. William R. Huffman, M.D., examined Wyrich on August 2, 2018, in connection with Wyrich's SSI application. (AR 551–62.) Huffman performed musculoskeletal and neurological examinations and, based on those examinations and Wyrich's reported medical history and symptoms, diagnosed Wyrich with "back pain[,]" among other things. (AR 562.) Huffman also "recommend[ed] reevaluation in approximately one year" because Wyrich "never had adequate follow up on his back pain and no treatment[.]" (*Id.*)

The ALJ found that Wyrich had severe degenerative disc disease of the lumbar spine at step two and addressed Huffman's examination results several times in his decision, including while analyzing the extent to which back pain limited Wyrich's RFC at step four. At step four, the ALJ also considered evidence that Wyrich did not take prescription medication for his back pain and had not received any surgery or other medical treatment for that pain:

> [Wyrich] alleged a history of back pain that radiates down his legs. However, he reported he is not on any prescription pain medication but only takes 'over the counter' Aleve. He has had no surgery, injections, or physical therapy on his back. He alleged left hand cramps due to [his] history of suicidal attempts by cutting his left wrist. However, he reported he has not received any treatment for his nerve damage. The claimant stated he can sit for an hour or two hours, lift 30 to 40 pounds, walk 20 minutes, and stand for an hour.
>
> *                *                *
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> *                *                *

7

Regarding the claimant's back problems and sciatica, the record indicates the claimant complained of a history of radiating back pain since 2015 (Ex. 4F/10). However, despite these complaints, examination showed normal muscle tone and strength, and normal gait (Exs. 2F/66, 72, 79, 99, 105, 111, 124, 131; 6F/1, 26, 33; 8F/15, 21, 28).

A consultative examination showed painful range of motion in the lumbosacral paravertebral region of his back, lumbar spine flexion of 90 degrees and extension of 15 degrees, and positive straight leg raising bilaterally, but normal range of motion of the shoulders, elbows, hips, knees, ankles, and wrists, normal motor strength in the upper and lower extremities, no neurosensory deficits, negative Romberg's testing, and normal gait (Ex. 4F).

Diagnostic imaging of the lumbar spine showed grade 1 retrolisthesis of L4 on L5, and moderate spondylolysis and facet arthropathy of the lumbar spine, most pronounced at the levels of L4–L5 and L5–S1 (Ex. 5F/2). The claimant reported he is not seeing anyone f[or] his back problems nor has he been prescribed any medication to treat his pain symptoms (Testimony).

In addition, the claimant has not undergone any other treatment modalities, such as physical therapy, injections, or surgical intervention (Testimony). However, he reported he takes over the counter Aleve (Testimony). Further, despite the claimant's allegations, he also denied symptoms on the record, including arthritis or other disorder of the muscles or bones, including the spine, back, and joints (Ex. 2F/5).

*　　*　　*

The undersigned finds the opinion of consultative examiner, William Huffman, M.D., persuasive because it [is] supported by the record (Ex. 4F). Dr. Huffman opined that the claimant could not lift over 20 pounds; sit for seven hours per day; stand for four hours a day; and walk up to four hours a day. The standing and walking limitations are not supported by Dr. Huffman's examination, which showed normal range of motion of the hips, knees, and ankles, normal motor strength, no neurosensory deficits, negative Romberg's testing, and normal gait (Ex. 4F).

While the undersigned did not find the claimant was as limited with regard to standing and walking due to normal muscle tone and strength and normal gait (Exs. 2F/66, 72, 79, 99, 105, 111, 124, 131; 6F/1, 26, 33; 8F/15, 21, 28), this opinion is generally consistent with the evidence of record which supports the claimant can perform a range of light work.

*　　*　　*

As for his degenerative disc disease of the lumbar spine, a consultative examination showed reduced lumbar range of motion, and positive straight leg raising but normal strength in the upper and lower extremities, no neurological deficits, and

normal gait (Ex. 4F). Medical imaging of the lumbar spine showed grade 1 retrolisthesis of L4 on L5, and moderate spondylolysis and facet arthropathy of the lumbar spine (Ex. 5F/2). However, the claimant [ ] is not receiving an[y] treatment for his back condition and he has not undergone any surgical intervention (Testimony). He treats his back pain with over the counter Aleve (Testimony).

(AR 15–19.)

Wyrich argues that the ALJ's RFC analysis violated Social Security Ruling 16-3p, which requires ALJs "to consider and address [a claimant's] reasons for not pursuing treatment and provide an explanation for how the reasons were considered" before relying on a claimant's failure to pursue or comply with prescribed treatment as evidence regarding the severity of his or her symptoms.[2] (Doc. No. 22-1, PageID# 749 (citing SSR 16-3p, 2016 WL 1119029, at *8–9 (Mar. 16, 2016).) Specifically, Wyrich argues that the ALJ failed to consider evidence that Wyrich could not afford treatment and that his depression and alcoholism may also have contributed to his failure to seek treatment for his back pain. (Doc. No. 22-1.) Wyrich cites record evidence establishing that he had no income source other than his girlfriend (AR 36); that he suffers from alcoholism and has not received effective substance abuse treatment because he cannot afford it (AR 50); that he told a care provider at Volunteer Behavioral Health Care System that he would not be able to afford treatment even if it were provided on a sliding scale (AR 393); that he reported a lack of motivation, "longstanding fatigue[,]" and "low energy" related to depression (AR 582, 590); and that he "didn't go to the doctor" after suffering a stroke (AR 590). The Commissioner responds that SSA regulations allowed the ALJ to consider Wyrich's medication and treatment in evaluating

---

[2]     The Court notes that Wyrich did not include this specific error in the statement of errors in his opening brief. (Doc. No. 22-1.) The Court previously informed Wyrich that his brief must include a statement of errors "set[ting] forth, in separately numbered paragraphs, the specific errors allegedly committed at the administrative level which entitle [him] to relief" and that the Court would "consider only those errors specifically identified in the briefs." (Doc. No. 19, PageID# 723.) However, because Wyrich argued this error in the body of his brief and because the Commissioner has responded to Wyrich's argument, the Court will also address it.

the limiting effects of his back pain and that the ALJ "cited [lack of treatment] as one factor, among several, for finding that [Wyrich's] subjective complaints were not consistent with the record." (Doc. No. 24, PageID# 765.)

Section 416.929(c)(3) allows an ALJ to consider an SSI claimant's current and past medications and treatment in evaluating the claimant's symptoms, including pain. 20 C.F.R. § 416.929(c)(3)(iv), (v). The SSA has explained that "if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms," then the SSA "may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." SSR 16-3p, 2016 WL 1119029, at *8. However, the SSA has promised claimants that it "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id.* Examples of such reasons include the fact that "[a]n individual may not be able to afford treatment and may not have access to free or low-cost medical services" and that "mental limitations" may prevent an individual from "understand[ing] the appropriate treatment for or the need for consistent treatment of his or her impairment." *Id.* at *9. The SSA has further promised that it "will consider and address reasons for not pursuing treatment that are pertinent to an individual's case" and "will explain how [it] considered the individual's reasons in [its] evaluation of the individual's symptoms." *Id.*

There is no dispute that the ALJ repeatedly considered the fact that Wyrich was not receiving, and had never received, any medical treatment or prescription medication for his back condition in evaluating the limiting effects of Wyrich's back pain and finding that Wyrich could

stand and walk for six hours each in an eight-hour day. (AR 19.) Wyrich argues that the ALJ violated SSR 16-3p by failing to consider and address possible reasons why Wyrich was not receiving treatment or taking prescription medication for his back pain, including specific record evidence of Wyrich's poverty, depression, and alcoholism. (Doc. No. 22-1.) The Commissioner has not argued that the ALJ considered or explained his consideration of these or any other reasons, and the Court finds no indication in the record that the ALJ did so.

The ALJ failed to follow SSA rules and regulations requiring him to consider reasons why Wyrich "may not have pursued treatment" for his back pain and to "explain how [he] considered [those] reasons . . . ." SSR 16-3p, 2016 WL 1119029, at *9. Where, as here, "an ALJ fails to follow agency rules and regulations, we find a lack of substantial evidence, 'even where the conclusion of the ALJ may be justified based upon the record.'" *Miller*, 811 F.3d at 833 (quoting *Gentry*, 741 F.3d at 722). Remand is therefore warranted for reconsideration of possible reasons why Wyrich did not pursue treatment for his back pain.

Because remand is warranted on this ground, and because reconsideration of Wyrich's reasons for not pursuing treatment for his back pain may also require reconsideration of Dr. Huffman's opinions regarding the limiting effects of that pain, the Court need not address Wyrich's remaining arguments regarding the ALJ's consideration of Dr. Huffman's opinion and the hypotheticals the ALJ posed to the vocational expert. *See Watson v. Comm'r of Soc. Sec.*, No. 2:16-cv-14355, 2018 WL 1404581, at *6 (E.D. Mich. Mar. 2, 2018) (declining to address "Plaintiff's remaining arguments as to the ALJ's treatment of opinion evidence . . . or the ALJ's consideration of Plaintiff's ability to stand and walk" where other "reversible error . . . require[d] remand and a re-evaluation of the RFC"), *report and recommendation adopted*, 2018 WL 1399341 (E.D. Mich. Mar. 19, 2018); *Maddex v. Astrue*, No. 3:10CV159, 2011 WL 1990588, at *13 (S.D.

Ohio May 2, 2011) (declining to address Plaintiff's remaining arguments after finding "that the ALJ's decision should be reversed for failure to properly consider Plaintiff's obesity consistent with SSR 02–1p"), *report and recommendation adopted*, 2011 WL 1988537 (S.D. Ohio May 23, 2011). If necessary, Wyrich may raise these issues again on appeal. *See Dawes v. Saul*, No. 3:19-cv-00001, 2020 WL 587426, at *8 (M.D. Tenn. Feb. 6, 2020), *report and recommendation adopted sub nom. Dawes v. Soc. Sec. Admin.*, 2020 WL 906227 (M.D. Tenn. Feb. 25, 2020); *Wilson v. Colvin*, No. 3:13-CV-84, 2014 WL 619713, at *6 (E.D. Tenn. Feb. 18, 2014).

## IV.     Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that Wyrich's motion for judgment on the administrative record (Doc. No. 22) be GRANTED, that the Commissioner's final decision be VACATED, and that this matter be REMANDED to the Social Security Administration for further administrative proceedings consistent with this Report and Recommendation.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 22nd day of February, 2022.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge